## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 |
| JOSEPH D. McMAHON and | ) | |
| TAMARA R. McMAHON, | ) | |
| | ) | Bankruptcy No. 18-00443 |
| Debtors. | ) | |

## RULING ON MOTION FOR RELIEF FROM STAY

This matter came before the Court for hearing on May 24, 2018 in Fort

Dodge, Iowa. Michael Pettengill appeared for Debtors Joseph and Tamara

McMahon ("Debtors"). Thomas Burke appeared for Creditor Great Western Bank

("the Bank"). The Court received evidence and heard argument. This is a core

proceeding under 28 U.S.C. § 157(b)(2)(G).

## STATEMENT OF THE CASE

Debtors owe the Bank over $2 million on three notes. The largest notes

were part of business loans for a hotel and restaurant. In addition, the Bank has a

mortgage on Debtors' homestead, a rental property, and some vehicles. The

mortgages have future advance clauses. The Bank argues that these clauses mean

that the large business notes now fully encumber all the mortgaged properties.

Debtors argue that the future advance clauses are ineffective because they did not

know about the future advance clauses. They also argue that the mortgage itself

limits the total amount secured to the initial amount of the loan.

## BACKGROUND, FACTS, AND ARGUMENTS

Michael Gallagher works at the Bank as a loan workout officer.  He is familiar with the Debtors' loans with the Bank.  He testified about the Debtors' financial dealings with the Bank.  The Bank has three promissory notes: Note 2538 (Exhibit 1), Note 3569 (Exhibit 2), and Note 3570 (Exhibit 3).  When Debtors filed bankruptcy, the total amount owing on these notes was $2,191,507.  The payoff amount on the date of hearing was $2,203,728.30.  This amount does not include attorney's fees—just principle, interest, and fees.

Although there are a number of different transactions that make up the financial dealings between the parties, the core of this dispute is the effectiveness of future advance clauses.  In particular, the issue is whether those clauses cover the mortgages on Debtors' homestead and rental property.  The Bank believes it is cross-collateralized across all of the collateral including the homestead and rental property.  Debtors disagree.  Debtors argue that the homestead and rental property are subject to Note 2538 only—not Note 3569 or Note 3570.

Debtors executed Note 2538 in favor of the Bank for $127,266 on March 7, 2011.  It has a current balance of $81,564.  Note 2538 is secured by three mortgages—one on a rental property and two on Debtors' homestead.  It is also secured by vehicles worth about $40,000.

Exhibit 10 is a real estate mortgage 1431 South 4th Avenue in Fort Dodge

("the rental property"). The assessed value of this property is $65,290. This

mortgage has a future advance clause. It provides in relevant part:

> **SECURED DEBT DEFINED.** The term "Secured Debt" includes, but
> is not limited to, the following:
> A. The promissory note(s), contract(s), guaranty(s), or other evidence
>    of debt described below and all extensions, renewals, modifications
>    or substitutions . . .
> B. All future advances from Lender to mortgagor or other future
>    obligations of Mortgagor to Lender under any promissory note,
>    contract, guaranty, or other evidence of debt existing now or
>    executed after this Mortgage whether or not this Mortgage is
>    specifically referred to in the evidence of debt and whether or not
>    such future advances or obligations are incurred for any purpose that
>    was related or unrelated to the purpose of the Evidence of Debt.
> C. . . . .

Exhibit 10 at 2. This mortgage also has a "Maximum Obligation Limit" clause.

That clause provides:

> **MAXIMUM OBLIGATION LIMIT.** The total principal amount of
> the Secured Debt (hereafter defined) secured by this Mortgage at any
> one time shall not exceed the amount stated above. This limitation of
> amount does not include interest, loan charges commitment fees,
> brokerage commissions, attorneys' fees and other charges validly made
> pursuant to this Mortgage and does not apply to advances (or interest
> accrued on such advances) made under the terms of this Mortgage to
> protect Lender's security and to perform any of the covenants contained
> in this Mortgage. Future advances are contemplated and, along with
> other future obligations, are secured by this mortgage even though all
> or part may not yet be advanced. Nothing in this Mortgage, however,
> shall constitute a commitment to make additional or future loans or
> advances in any amount. . . . .

Id. at 1.

Before offering the homestead as security for Note 2538 in March 2011,
Debtors had entered into two mortgages in 2006 and in 2009 on 2005 Grandview
Drive ("the homestead").  The Bank held the first mortgage (2006) and that
mortgage has a future advance clause similar to the one quoted above.  The
mortgage also has a "Maximum Obligation Limit" that is substantially similar to
the one quoted above.  The Bank took a second mortgage, recorded in 2009, which
also continued a future advance clause.

> This Security Instrument secures to Lender the repayment of
> Borrower's Note, Consumer Loan Agreement, Guaranty, or similar
> writing . . . and all renewals, extensions, modifications and substitutions
> thereof.  This Security Instrument also secures: all future advances of
> funds from Lender to Borrower as evidenced by any promissory note,
> consumer loan agreement, or similar writing that may hereafter be
> executed by Borrower to Lender; all future obligations of Borrower to
> Lender; all future obligations of Borrower to Lender that may be
> evidenced by any contract, guaranty, or other evidence of debt hereafter
> executed by Borrower . . . .

Exhibit 12 at 2–3.  There is no "Maximum Obligation Limit" clause in this
mortgage.

In August 2013, Debtors entered into two Small Business Administration
loans with the Bank—Note 3569 and Note 3570.  Note 3569 was for the Budget
Host Inn in Fort Dodge, one of Debtors' businesses.  The payoff amount for Note
3569 is $1,779,789.99.  Debtors also personally guaranteed this note.

4

Note 3570 was for Eiler's Steakhouse, LLC, another of Debtors' business. The payoff amount for this Note is $344,101.63. Debtors also personally guaranteed this debt.

Debtors executed both of these notes in 2013, after Debtors entered into the 2011 Note that applies to the homestead, rental property, and vehicles. The dispute is now about whether the future advance clauses in the earlier mortgages makes those properties collateral for the Small Business Administration hotel and restaurant loans.

Debtors argue that the future advance clauses do not apply. Debtors argue they did not know what the future advance clause meant or had insufficient notice of its meaning and effect when they signed. Debtors also argue that the "Maximum Obligation Limit" clause limits the amount of debt that the homestead can secure. Debtors thus conclude that the homestead and rental property are encumbered only by a $100,000 senior mortgage obligation to U.S. Bank and Note 2538 to the Bank, which specifically states that the homestead and rental property are the Bank's collateral. Debtors conclude that the value of the collateral secured by Note 2538 exceeds the amount due on that note and the Bank is not entitled to relief from the stay on the homestead or rental property.

The Bank argues that the future advance clauses make the Bank cross-collateralized against all Debtors' properties, and therefore Debtors have no equity

in any of the collateral. The Bank concludes that its loans in total fully encumber all of Debtors' collateral such that the Bank is entitled to relief from the stay on all of it.

The Bank argues that the "Maximum Obligation Limit" applies only against lienholders junior to the Bank and does not limit future advances by the Bank. The Bank argues that the function of this "maximum obligation" clause is to limit the amount of debt that will be senior, not to limit the total collateral amount.

## CONCLUSIONS OF LAW AND ANALYSIS

In general, future advance clauses, also sometimes called "dragnet clauses," are disfavored but nevertheless effective under Iowa law:

> In Farmers Trust and Savings Bank v. Manning, 311 N.W.2d 285, 289 (Iowa 1981), the court noted Iowa views with disfavor the inclusion of future advances clauses within mortgages drafted by the lender, especially when those clauses are situated within the mortgage contract in such a way that lends itself easily to lender overreaching and surprise. See also In re Simpson, 403 N.W.2d 791, 793 (Iowa 1987) (stating "[t]ypically, the fine print future advances clause buried in a security agreement will not convey the broad scope of its coverage to the borrower"). Nonetheless, future advances clauses have been upheld in this jurisdiction. Id.

Poweshiek Cty. Sav. Bank v. Hendrickson, 699 N.W.2d 684, 2005 WL 1224745 at *3 (Iowa Ct. App. 2005). "Even though . . . future advances clauses are valid, we have indicated that these clauses are adhesion contracts and are construed against the writer." Nat'l Loan Inv'rs, L.P. v. Martin, 488 N.W.2d 163, 166 (Iowa 1992).

6

In 2013, the Iowa Court of Appeals analyzed a future advance clause that was substantially similar to the future advance clause at issue here. The Court of Appeals concluded that the future advance clause was effective:

> The language of the future advances clause applies to any future advances under any promissory note, and specifically disavows any relatedness requirement. The clause also rejects any requirement the mortgage be specifically referenced in a future note. The clause is broad in its scope, and is not buried in the document in a way that might be misleading or allow for surprise. The title of the mortgage itself, as an "open-end real estate mortgage" alerts any reader to the presence of a future advances clause and the possibility of later loans being superior, further minimizing the risk of surprise. The parties clearly stated their intent to cover such notes in the future advances clause.

Wells Fargo Bank, N.A. v. Valley Bank & Tr., 839 N.W.2d 675, 2013 WL 4767889 at *2 (Iowa Ct. App. 2013). The Court of Appeals thus concluded that the future advance clause was effective. Id. at *3.

Here, the mortgages at issue are either captioned "OPEN-END REAL ESTATE MORTGAGE (With Future Advance Clause)" or have clearly written across the top of the mortgage the notice "THIS MORTGAGE CONTAINS A FUTURE ADVANCE CLAUSE." The future advance clauses themselves clearly "reject any requirement the mortgage be specifically referenced in a future note," are "broad in its scope," and are not "buried in the document in a way that might be misleading or allow for surprise." Based on the clear notice that the mortgages contained a future advance clause, as well as the clear language of the clauses

7

themselves, the Court rejects Debtors argument that they had insufficient notice of the future advance such that it is ineffective.

Debtors argue that, even if the future advance clauses were effective, the "Maximum Obligation Limit" negates their effect here by limiting the total debt that the homestead may secure. The problem with Debtors' argument is that there was a similar "Maximum Obligation Limit" clause in the <u>Wells Fargo</u> case where the Court found that the future advance clause applied. Debtors' argument is not entirely without logical appeal, however, as evidenced by Judge Vogel's dissent. <u>Id</u>. Judge Vogel's dissent emphasized the following language in that clause: "The total principal amount of the Secured Debt . . . secured by this Mortgage **at any one time shall not exceed the amount stated above**." <u>Id.</u> at *3 (Vogel, J., dissenting) (emphasis in original). Based on this language, he reasoned as follows:

> The majority focuses on the later language of the mortgage, paragraph four, and concludes this paragraph creates an expansive security interest under its "dragnet clause," regardless of the nature of the future advancement. In doing so, the "maximum obligation limit" clause is obscured.
>
> "Dragnet clauses are not favored in equity. Our cases say they should be carefully scrutinized and strictly construed." <u>Freese</u>, 253 N.W.2d at 925. However, while the future advances clause here does not restrict the type of loan the mortgage could secure, the plain language of the maximum obligation limit clause restricts other debt that could be secured by the mortgage.

<u>Id.</u> at *4 (Vogel, J., dissenting).

8

It could be further argued that Judge Vogel's reasoning is consistent with the
Iowa Supreme Court's clear instruction "that these clauses are adhesion contracts
and are construed against the writer." Nat'l Loan Inv'rs, L.P. v. Martin, 488
N.W.2d 163, 165–66 (Iowa 1992).  However, there is no Iowa case so holding—
and the thought-provoking dissent thus does not control.  In fact, the majority
ruling in Wells Fargo is clear that future advance clauses like this one are effective
even if there is a "Maximum Obligation Limit" with similar language limiting "the
total principal amount of the Secured Debt" to the amount set out on the mortgage.
The Court thus must agree with the Bank that, under Iowa Law, the "Maximum
Obligation Limit" does not limit the reach of a future advance clause as Debtors
suggest.  Instead, such clause appears to limit the amount of debt that will be senior
to another security interest, not the total amount of collateral available to the Bank
in a situation like this.

The future advance clauses are effective.  The undisputed evidence at the
hearing showed that the Bank is under-secured.  The valuation of the collateral—
whether the Court uses the Bank's numbers or the Debtors' numbers—show that
all of the collateral is fully encumbered.  Debtors did not present any evidence or
argument to suggest otherwise.  Interest continues to accrue and the Bank is not
adequately protected.  "A creditor is entitled to relief from the automatic stay 'for
cause, including the lack of adequate protection of an interest in property of such

9

party in interest.'" In re Dittrick, Bankr. No. 15-01213, 2016 WL 7742158, at *2

(Bankr. N.D. Iowa Nov. 1, 2016) (quoting 11 U.S.C. § 362(d)(1)).  Accordingly,

the Bank is entitled to relief from the automatic stay here.

## CONCLUSION

**WHEREFORE**, The Bank's Motion for Relief from the Automatic Stay is

GRANTED.

Dated and Entered:

June 8, 2018

THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE

10